Fehr v. NHSP Warden                      CV-03-058-M    11/04/03
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Jonathan Fehr,
        Petitioner

        v.                                  Civil No. 03-58-M
                                            Opinion No. 2003 DNH 191
Jane Coplan, Warden,
New Hampshire State Prison,
        Respondent


                         O R D E R


        Jonathan Fehr, a state prisoner, seeks habeas corpus relief

from his state court conviction for unlawful possession of a

firearm by a convicted felon.  See 28 U.S.C. § 2254.

Specifically, he claims his trial counsel's performance was

constitutionally deficient insofar as counsel failed to raise a

"mistake of law" or "entrapment by estoppel" defense.  Respondent

moves for summary judgment.  Although the time for filing an

objection passed roughly three months ago, Fehr has not objected

or otherwise responded to that motion.


        For the reasons set forth below, the claims raised in Fehr's

petition are without merit and, therefore, respondent is entitled

to judgment as a matter of law.

## Background

In 1993, Fehr was convicted in the Lawrence (Massachusetts) District Court of a felony - larceny of a motor vehicle or trailer, in violation of Mass. Gen. Laws ch. 266, § 28. Approximately six years later, in 1999, Fehr purchased a Browning rifle and ammunition from Heritage Firearms, in Nashua, New Hampshire. As part of that transaction, Fehr was required to complete a "Firearms Transaction Record," also known as an "ATF Form 4473." Among other things, that form requires the prospective purchaser to state whether he or she has ever been convicted, in any court, of a felony. In response to that question, Fehr wrote "no" in the blank space provided, notwithstanding his Massachusetts felony conviction six years earlier.

As required by federal law, the firearms dealer contacted the FBI center in Virginia and entered into the national instant criminal background check system (also known as "NICS") the information that Fehr had provided on the Form 4473. The system advised the dealer to "proceed" with the sale. In other words, the NICS system did not contain any record of Fehr's previous

2

felony conviction.  So, in light of Fehr's (inaccurate) statement on the Form 4473, and the NICS system's statement to "proceed," the dealer sold Fehr the firearm.

Later that same month, Fehr was arrested on unrelated charges.  He subsequently authorized police to search his apartment in Nashua, New Hampshire, where they located the Browning rifle and ammunition Fehr had recently purchased.  In December of that year, Fehr was indicted by a state grand jury and charged with unlawful possession of a firearm by a convicted felon, in violation of N.H. Rev. Stat. Ann. ("RSA") 159:3.  On October 24, 2001, following a bench trial, Fehr was found guilty and, subsequently, sentenced to three to six years at the New Hampshire State Prison.  Fehr's conviction was affirmed on appeal to the New Hampshire Supreme Court in an unpublished order dated August 20, 2002.

In October of 2002, Fehr filed a motion for a new trial in the state superior court arguing that: (1) he should have been acquitted under a "mistake of law" or "reliance" defense because he relied on the "proceed" message from the NICS system as proof

that he was legally entitled to possess a firearm (notwithstanding his prior felony conviction); and (2) his appointed counsel was ineffective because he failed to raise such a defense at trial.  That motion was denied by margin order, as was Fehr's motion for reconsideration.  He then appealed to the New Hampshire Supreme Court, which declined to accept his appeal.  This proceeding followed, in which Fehr again advances his ineffective assistance of counsel claim.

## Discussion

I.  Legal Framework.

Under the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254(d), the standard of review applicable to a state inmate's petition for habeas corpus varies, depending upon the means by which the state court resolved the petitioner's underlying claims.  If the state court addressed those claims on the merits, this court's standard of review is highly deferential.  To prevail under those circumstances, the petitioner must demonstrate that the state court's adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

4

the State court proceeding." 28 U.S.C. § 2254(d)(2). Alternatively, habeas relief may be granted if the petitioner demonstrates that the state court's resolution of the issues before it "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). See also Williams v. Taylor, 529 U.S. 362, 399 (2000).

Importantly, however, when the state court has not addressed the substance of the petitioner's claims on the merits, this court considers those claims de novo. See, e.g., Gruning v. Dipaolo, 311 F.3d 69, 71 (1st Cir. 2002) (holding that the deferential standard of review prescribed by section 2254(d) does not apply to a state inmate's habeas petition when the state appellate court failed to address the petitioner's constitutional claim); Fortini v. Murphy, 257 F.3d 39, 47 (1st Cir. 2001) (noting that "AEDPA's strict standard of review only applies to a 'claim that was adjudicated on the merits in state court proceedings,'" and concluding that "AEDPA imposes a requirement of deference to state court decisions, but we can hardly defer to

the state court on an issue that the state court did not address."), cert. denied, 535 U.S. 1018 (2002). See generally 28 U.S.C. § 2254(d).

Because no state court ever addressed Fehr's ineffective assistance claim on the merits (the trial court denied Fehr's motion for new trial in a margin order and the supreme court refused to accept Fehr's appeal), this court must review that claim de novo.

II. Petitioner's Ineffective Assistance Claim.

A. The "Strickland" Standard.

To prevail on an ineffective assistance of counsel claim, a petitioner must satisfy both elements of a two-part test. First, he must "show, by a preponderance of the evidence, that [his] trial counsel's conduct fell below the standard of reasonably effective assistance." Gonzalez-Soberal v. United States, 244 F.3d 273, 277 (1st Cir. 2001) (citing Strickland v. Washington, 466 U.S. 668, 687 (1984)). Next, a petitioner must demonstrate that counsel's errors actually prejudiced the defense. Id. See also Cofske v. United States, 290 F.3d 437 (1st Cir. 2002).

With regard to the first prong of the <u>Strickland</u> test, the court employs a highly deferential standard of review in assessing the quality of trial counsel's representation, and "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689 (citation and internal quotation marks omitted). In other words, to satisfy his or her burden, a petitioner must demonstrate that counsel made errors that were "so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." <u>Id.</u> at 687.

To satisfy the second prong of the <u>Strickland</u> test, a petitioner must show "actual prejudice." That is to say, a petitioner must demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Id.</u> at 694. A "reasonable probability" is one "sufficient to undermine confidence in the outcome." <u>Id.</u>

7

Because the failure to make either showing defeats a claim of ineffective assistance, the quality of counsel's performance need not be examined if the petitioner fails to demonstrate any prejudice. See Strickland, 466 U.S. at 697. Such is the case here. Fehr's defense was not prejudiced by trial counsel's failure to raise a "mistake of law" or "reliance" or "entrapment by estoppel" defense, because such a defense would have been meritless.

B.    The Substance of Petitioner's Claims.

As part of his claim that trial counsel's performance was constitutionally deficient in that counsel neglected to raise a "mistake of law" defense, Fehr appears to advance two arguments. First, he claims to have detrimentally relied on the response from the NICS system authorizing the firearms dealer to "proceed" with the sale. And, according to Fehr, his (allegedly) reasonable reliance on that response gave rise to a viable defense to the charge of felon in possession. In support of that claim, Fehr points to New Hampshire's criminal code, which provides, in pertinent part, that:

8

>A person is not relieved of criminal liability because he acts under a mistaken belief that his conduct does not, as a matter of law, constitute an offense <u>unless</u> his belief is founded upon <u>a statement of the law</u> contained in a statute or other enactment, or an <u>administrative order or grant of permission</u>, or a judicial decision of a state or federal court, or a <u>written interpretation of the law relating to the offense officially made</u> by a public servant, agency or body legally empowered with authority to administer, enforce or interpret such law. The defendant must prove a defense arising under this subsection by a preponderance of evidence.

RSA 626:3 II (emphasis supplied). As the New Hampshire Supreme Court has observed, under RSA 626:3, "[m]istake as to law is a defense only when the mistaken belief is founded in such reliable sources as legal enactments, administrative orders, judicial decisions or official written interpretations of the law." <u>State v. Stratton</u>, 132 N.H. 451, 458 (1989).

Plainly, then, the "proceed" statement that was received from the NICS computer system in response to the firearms dealer's inquiry into Fehr's background does not amount to the type of reliable interpretation of the law that the New Hampshire statute describes. In other words, the "proceed" response was not (nor could it reasonably be viewed as) an authoritative interpretation of New Hampshire's laws concerning the possession

9

of firearms by convicted felons. Nor did it amount to a legal opinion that, notwithstanding his prior felony conviction, Fehr was free to purchase a firearm. Nor did it constitute an authorization for Fehr to purchase a firearm, made by an "agency or body legally empowered with authority to administer, enforce, or interpret such law." RSA 626:3 II. Instead, the "proceed" response merely indicated that Fehr's felony conviction was not included in the NICS database.

Fehr is, of course, correct in asserting that there is some legal significance to the fact that the firearms dealer queried the NICS system and obtained a "proceed" statement. That event does not, however, hold the legal significance Fehr envisions. See Petitioner's memorandum at 5 (asserting that "the FBI 'proceed' instruction confirmed to the petitioner that he was not a felon, and granted him permission to purchase, and hence possess[,] the rifle"). On that point, Fehr is wrong. Rather than an authorization, issued by an agency empowered to give such authorization, for Fehr to purchase a firearm, the "proceed" response simply meant that the dealer could sell the weapon to Fehr without violating federal law, since the dealer was not

10

aware of (or on notice of) Fehr's felony conviction and had complied with the inquiry requirements of 18 U.S.C. § 922(t)(1).

Next, Fehr suggests that he reasonably believed that his prior state felony conviction had been "expunged," pursuant to Mass. Gen. Laws ch. 140, § 129B, thereby justifying (or at least explaining) his "no" response to the question on the ATF Form 4473, asking whether he had ever been convicted of a felony. And, says Fehr, since he reasonably believed that his prior felony conviction had been expunged, he also reasonably believed that he was legally authorized to purchase and/or possess a firearm.

Again, however, Fehr's interpretation of the statute on which he relies is incorrect; the Massachusetts statute could not have formed the basis of a reasonable belief that Fehr's felony conviction had, by operation of law, been expunged. The statute simply provides that, under certain circumstances, individuals previously convicted of felonies are eligible for a firearm identification card and their right to possess certain specified firearms, in the Commonwealth of Massachusetts, is deemed

11

restored.  See Mass. Gen. Laws ch. 140, § 129B(1)(I) (2000).
Specifically, the statute provides that if an individual has been
released from prison not fewer than five years "preceding such
application [for a firearm identification card], such applicant's
right or ability to possess a non-large capacity rifle or shotgun
shall be deemed restored in the commonwealth with respect to such
conviction."  Id. (emphasis supplied).

Nowhere does the statute suggest that Fehr's prior state
felony conviction was, as he argues, "expunged" by operation of
law and by virtue of the passage of time.  Nor did its terms
purport to authorize Fehr's purchase (or possession) of a firearm
outside the Commonwealth of Massachusetts (e.g., in New
Hampshire).  Moreover, the statute expressly provides that,
"[n]othing in this section shall authorize the purchase . . . of
any weapon [or] ammunition . . . that is . . . prohibited by
state or federal law."  Plainly, then, the Massachusetts statute
did not purport to authorize Fehr, a convicted felon, to purchase
a firearm in New Hampshire - a state which, like the federal
government, specifically prohibits such purchases.  Nor did it

12

authorize him to represent to the firearms dealer that he had never been convicted of a felony when he had been so convicted.

## Conclusion

Having reviewed, de novo, the claims raised in Fehr's petition for habeas corpus relief, the court concludes that they are without legal merit. Fehr's counsel was hardly required to raise meritless defenses and, in any event, Fehr was not prejudiced by trial counsel's failure to raise a "mistake of law" or "entrapment by estoppel" defense. In other words, there is no "reasonable probability" that, but for counsel's (allegedly) unprofessional errors, the result of Fehr's criminal trial would have been different. See generally Strickland, supra. Accordingly, for the foregoing reasons, as well as those set forth in respondent's thorough and persuasive legal memorandum, respondent's motion for summary judgment (document no. 10) is granted.

The Clerk of Court shall enter judgment in accordance with this order and close the case.

13

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

November 4, 2003

cc:  Nicholas P. Cort, Esq.
     Jonathan Fehr